# IN THE SUPREME COURT OF TEXAS

═══════════

No. 20-0071

═══════════

═══════════

IN RE ALLSTATE INDEMNITY COMPANY, RELATOR

═══════════

═══════════

ON PETITION FOR WRIT OF MANDAMUS

═══════════

**Argued February 24, 2021**

JUSTICE HUDDLE delivered the opinion of the Court.

In this mandamus proceeding, we are asked to decide whether the trial court abused its discretion by striking a counteraffidavit served under section 18.001 of the Civil Practice and Remedies Code and precluding the offering party from contesting the reasonableness of the subject medical expenses at trial. We hold that it did, and we conditionally grant the writ.

## I

Norma Alaniz sued her insurer, Relator Allstate Indemnity Company, after she was injured in an automobile accident. Alaniz alleged that Allstate breached its policy by failing to pay her Underinsured Motorist (UIM) benefits. Alaniz also brought claims for breach of the common-law duty of good faith and fair dealing, violations of the Insurance Code and the Deceptive Trade Practices–Consumer Protection Act, and negligent misrepresentation.

Among other damages, Alaniz seeks recovery of her reasonable and necessary medical expenses. To support these claimed charges, Alaniz timely served affidavits from several medical providers under Civil Practice and Remedies Code section 18.001. The providers submitting

affidavits included Corpus Christi EMS, the hospital and other clinics where Alaniz was treated, radiologists, an orthopedist, two physical-therapy facilities, and a pharmacy. Alaniz's medical expenses, as set forth in the affidavits, total around $41,000. However, the bulk of these charges—approximately $37,000—comes from three sources: the hospital; Dr. Miguel Berastain, her treating orthopedist; and Humpal Physical Therapy. In response, Allstate timely served a counteraffidavit from Christine Dickison, a registered nurse experienced in medical billing and coding. Dickison's counteraffidavit challenged the reasonableness, but not the necessity, of the three medical service providers' charges constituting the majority of Alaniz's claimed medical expenses.[1]

Dickison's counteraffidavit first sets forth her educational and professional background. She has an associate's degree in Nursing and a bachelor's degree in the Science of Nursing. She is a registered nurse and a Certified Professional Coder. Dickison is also certified as a Professional Medical Auditor by the AAPC (formerly the American Association of Professional Coders). This portion of the counteraffidavit concludes by stating:

> My medical training, 21 years of experience in healthcare including 12 years of medical billing review, coding and auditor certification and demonstrated knowledge of the CPT coding system qualify me as an expert with regard to understanding medical documentation and medical billing practices.

Dickison's counteraffidavit next explains the process she employed to arrive at her conclusions regarding Alaniz's claimed medical expenses. Dickison averred that "[f]or many years on a regular basis," she has performed billing and coding reviews involving the same or

---

[1] Allstate separately served counteraffidavits from Dr. Charles Kennedy addressing the necessity of the charges by some of Alaniz's medical providers. Those counteraffidavits have not been challenged and are not at issue here.

similar medical services. She first compares the CPT codes[2] on the itemized medical bills to the medical records (or chart) of the visit to determine whether the provider chose the correct CPT code for the medical service rendered. She then uses an online database called Context4Healthcare to determine the median charge for the service associated with each CPT code in the zip code and on the date on which the service was rendered. According to Dickison, "to correctly utilize this database and interpret the analysis, the user must be proficient in the use of CPT codes, the use of CPT modifiers, billing interpretation, and the different medical fee schedules."

After using this methodology to evaluate the medical billing submitted by Alaniz's medical providers, Dickison opined that the expenses charged by three of Alaniz's medical providers "exceeded what would be considered a reasonable charge for the medical services that were provided and contained billing errors and/or issues." Dickison's counteraffidavit specifies which amounts she claims are excessive.[3] It includes a copy of her CV, a seven-page expert report, plus appendices and ten pages of spreadsheets reflecting details of the referenced billing data.

Alaniz filed an Objection to and Motion to Strike Dickison's Controverting Affidavit. In it, Alaniz contended that Dickison's counteraffidavit should be struck for not complying with Civil Practice and Remedies Code section 18.001(f). Alaniz argued Dickison's counteraffidavit was "wholly and fatally defective" because (1) it was not on its face made by a person qualified to testify in contravention of all or part of any of the matters contained in the initial affidavit, (2) Dickison's opinions were unreliable, and (3) the counteraffidavit did not give reasonable notice of the bases of its conclusions. Alaniz prayed for the trial court to strike the counteraffidavit in its

---

[2] CPT (Current Procedural Terminology) codes are uniform codes for medical, surgical, and diagnostic services that have been developed and published by the American Medical Association and are standardized throughout the country.

[3] Dickison's counteraffidavit also refers to the opinions set forth in Dr. Kennedy's counteraffidavit. But neither Dr. Kennedy's opinions nor Dickison's reliance on them is at issue in this proceeding.

3

entirety and "preclude [Dickison] from offering any opinions or testimony about the reasonableness and necessity of the medical bills that [Alaniz] has filed by affidavit to date."

After an evidentiary hearing at which Dickison testified, the trial court made the following key findings:

- Dickison's counteraffidavit "does not satisfy §18.001(f)'s requirement that a proper counter-affidavit show, on its face, that it was made by a person who is qualified, by knowledge, skill, experience, training, education, or other expertise, to testify in contravention of all or part of any of the matters contained in the initial affidavit." While Dickison is a nurse and "a highly-qualified medical coding and auditing expert," she "does not have the expertise required by the law of this State to controvert the reasonableness of the charges for the hospital, doctors, physical therapists, pharmacies and other healthcare providers at issue in this case."

- Dickison's opinions and the data on which they are based are unreliable.

- Dickison's counteraffidavit fails to provide reasonable notice of the bases for her contravention of Alaniz's affidavits or show she is qualified to contravene all the matters contained in Alaniz's affidavits, and her familiarity with CPT codes does not establish the requisite knowledge of the services themselves.

- Dickison's choice of the "median" charge for determining whether a charge is reasonable is conclusory, and her counteraffidavit fails to establish, by relevant and reliable evidence, how a charge that exceeds the median charge is unreasonable.

Based on these findings, the trial court granted Alaniz's motion and rendered the order that Allstate challenges. The order contains three key rulings:

1) Dickison's counteraffidavit is "stricken from the record and may not be offered, in any form or fashion, to contest the reasonableness and/or necessity of [Alaniz]'s medical expenses, or for any other purpose";

2) Dickison "is prohibited from testifying in this cause regarding the reasonableness and/or necessity of the medical bills [Alaniz] has filed to date, or for any other reason"; and

3) Allstate "is prohibited from questioning witnesses, offering evidence, or arguing to the jury the 'reasonableness of the medical bills' that [Alaniz] has submitted by affidavit to date."

4

Allstate petitioned the court of appeals for a writ of mandamus compelling the trial court to vacate its order. After initially granting a stay, the court denied the petition, stating only that Allstate "has not met its burden to obtain mandamus relief." *In re Allstate Indem. Co.*, No. 13-19-00346-CV, 2019 WL 5866592, at *2 (Tex. App.—Corpus Christi–Edinburg Nov. 8, 2019, orig. proceeding) (mem. op.). Allstate then petitioned this Court for a writ of mandamus.

## II

### A

As the party seeking mandamus relief, Allstate must show both that the trial court clearly abused its discretion, and that Allstate has no adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion when a decision is arbitrary, unreasonable, and without reference to guiding principles. *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019). Trial courts have no discretion in determining what the law is or applying the law to the facts. *In re Fox River Real Est. Holdings, Inc.*, 596 S.W.3d 759, 763 (Tex. 2020) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

### B

Under Texas law, a party seeking to recover its past medical expenses must prove that the amounts paid or incurred are reasonable. *See Dall. Ry. & Terminal Co. v. Gossett*, 294 S.W.2d 377, 383 (Tex. 1956) ("[R]ecovery of [past medical] expenses will be denied in the absence of evidence showing that the charges are reasonable."); *see also* TEX. CIV. PRAC. & REM. CODE § 41.0105 (limiting the recovery of incurred medical expenses to the amount "actually paid or incurred by or on behalf of the claimant"). As a result, claimants who do not avail themselves of the procedure set forth in Civil Practice and Remedies Code section 18.001 must present expert

5

testimony to establish the reasonableness of their medical expenses, even if the amount is undisputed. *See Hong v. Bennett*, 209 S.W.3d 795, 801 (Tex. App.—Fort Worth 2006, no pet.) ("Without a section 18.001(b) affidavit . . . , a plaintiff must prove the reasonableness and necessity of [medical] expenses by expert testimony.").

In 1979, the Legislature enacted the predecessor to section 18.001, providing that, under certain circumstances, an affidavit stating that medical expenses "were reasonable at the time and place that the services were rendered" was sufficient evidence to support a finding that the amounts charged were reasonable. Act of May 26, 1979, 66th Leg., R.S., ch. 721, § 1(a), 1979 Tex. Gen. Laws 1778, 1778. Under the original version of the statute, a party could controvert this claim simply by filing a counteraffidavit giving "reasonable notice of the basis upon which the party filing it intends at trial to controvert all or part of the claim covered by the initial affidavit." *Id.* § 1(b). This counteraffidavit could be made "upon information and belief by the party filing it, or such party's attorney." *Id.* Once a counteraffidavit was filed, the claimant could no longer rely on the original affidavit to constitute sufficient evidence at trial that its medical expenses were reasonable. *Id.*

Over the years, the Legislature modified the requirements for affidavits and counteraffidavits. The version applicable here, codified as section 18.001 of the Civil Practice and Remedies Code, allows the claimant to submit to the jury the issue of the reasonableness of her medical expenses without bringing an expert to testify by serving a compliant affidavit that goes uncontroverted:

> Unless a controverting affidavit is served as provided by this section, an affidavit
> that the amount a person charged for a service was reasonable at the time and place
> that the service was provided . . . is sufficient evidence to support a finding of fact
> by judge or jury that the amount charged was reasonable . . . .

6

TEX. CIV. PRAC. & REM. CODE § 18.001(b).[4]  This initial affidavit must be made either by the person who provided the service or the person in charge of records showing the service provided and charge made.  *Id.* § 18.001(c).

As the plain text of section 18.001(b) shows, the claimant's serving of this initial affidavit will not always allow her to reach the jury on reasonableness without expert testimony because a party may controvert the claimant's affidavit by serving a "counteraffidavit."  Section 18.001(f) sets forth the requirements of a compliant counteraffidavit:

> The counteraffidavit must give reasonable notice of the basis on which the party serving it intends at trial to controvert the claim reflected by the initial affidavit and must be taken before a person authorized to administer oaths.  The counteraffidavit must be made by a person who is qualified, by knowledge, skill, experience, training, education, or other expertise, to testify in contravention of all or part of any of the matters contained in the initial affidavit.

*Id.* § 18.001(f).

### III

The issue in this proceeding is whether Dickison's counteraffidavit complies with section 18.001(f).  We hold that it does, and that the trial court abused its discretion both by holding it does not and by penalizing Allstate for its purportedly noncompliant affidavit in a manner not authorized by section 18.001.

### A

The trial court first concluded that Dickison lacks the required expertise to controvert the reasonableness of the charges in the initial affidavits.  Section 18.001(f) requires that the

---

[4] All references to section 18.001 are to the version in effect before the 2019 amendments.  In 2019, section 18.001 was amended to state that neither the initial affidavits nor the counteraffidavits constitute evidence regarding causation.  Act of May 20, 2019, 86th Leg., R.S., ch. 779, § 1, 2019 Tex. Sess. Law Serv. 2210, 2210–12 (amending TEX. CIV. PRAC. & REM. CODE § 18.001).  The 2019 amendments also modified the deadlines for filing affidavits.  *Id.* Because these amendments apply only to actions commenced after September 1, 2019, *id.* § 2, they do not apply to this case.  However, our disposition would be the same under the current version.

counteraffidavit "must be made by a person who is qualified, by knowledge, skill, experience, training, education, or other expertise, to testify in contravention of all or part of any of the matters contained in the initial affidavit." *Id.* This statutory text tracks the portion of Texas Rule of Evidence 702 that establishes who may be qualified to provide expert opinion testimony. *See* TEX. R. EVID. 702 (limiting expert opinion testimony to a witness who is "qualified as an expert by knowledge, skill, experience, training, or education"). Dickison's counteraffidavit recites her extensive education and training in nursing and reflects she is a licensed registered nurse. She has twenty-one years of experience in healthcare, including twelve years reviewing medical bills, during which she further developed an understanding of medical documentation and medical billing practices.

Yet Alaniz argues that Dickison is not qualified to testify because the reasonableness of medical charges by a hospital or other medical provider can be challenged only by someone who is in the same field of medicine. We disagree. In *Gunn v. McCoy*, we noted that, given the complexity of modern health care costs and the lack of transparency in health care pricing, "it is not uncommon or surprising that a given medical provider may have no basis for knowing what is a 'reasonable' fee for a specific service." 554 S.W.3d 645, 673 (Tex. 2018). However, we concluded that insurance agents who have access to national and regional databases on which they can compare prices "are generally well-suited to determine the reasonableness of medical expenses." *Id.*

Similarly, Dickison is qualified to testify as to the reasonableness of medical charges. As set forth in her affidavit, she has education and over two decades' experience as a registered nurse—including a dozen years' experience with medical billing and coding—and experience using a nationwide database that compiles the amounts charged for the same medical services or

8

devices identified in the initial affidavits through standardized codes used by medical providers across the country. The trial court itself described Dickison as "a highly-qualified medical coding and auditing expert." Dickison's affidavit establishes that she is qualified to testify about the reasonableness of the medical expenses described in Alaniz's initial affidavits.[5]

Alaniz asserts that *Gunn* is inapplicable because it concerned the sufficiency of a claimant's initial affidavit under section 18.001(c), which (unlike section 18.001(f)) does not expressly require the affiant to be "qualified . . . to testify" about the reasonableness of the expenses. But the issue in *Gunn* was whether the claimant presented legally sufficient evidence of her past medical expenses, and our discussion was not confined to section 18.001(c). Instead, we noted that, while the statute's intent is to "streamline" proof of reasonableness and necessity of medical expenses, the statute does not negate the requirement that "reasonableness and necessity be in fact proven by legally sufficient evidence." *Id*. at 672–73. We therefore considered whether the affiant in that case—a subrogation agent—was "in a position to testify to the reasonableness and necessity of medical expenses." *Id.* at 673. Having concluded in *Gunn* that an insurance agent who relies on databases of medical expenses was qualified to testify that those expenses were reasonable, we hold that Dickison's affidavit similarly establishes her qualification to testify that certain medical expenses were not.

The trial court's order cited two court of appeals opinions in support of its finding that Dickison lacked the required expertise to controvert the reasonableness of the medical expenses. *See Hong*, 209 S.W.3d at 803; *Turner v. Peril*, 50 S.W.3d 742, 747 (Tex. App.—Dallas 2001, pet.

---

[5] In contrast to reasonableness, we recognized in *Gunn* that medical providers are in the best position to determine what treatments or procedures, and resulting expenses, are necessary. 554 S.W.3d at 674. So medical providers "ideally" would be the ones to testify about the necessity of medical expenses or, put differently, whether a particular course of treatment was necessary under the relevant standard of care. *Id.* But even as to necessity, we stated that "the ideal paradigm does not reflect today's complex health care system," and the reality of our health care system does not require that testimony about the necessity of medical expenses be limited to medical providers. *Id.*

denied). Alaniz claims these cases support her assertion that only someone with expertise in a particular medical field can be qualified to challenge the reasonableness of medical expenses in that field. But neither case announces such a broad rule. Instead, they merely hold that an affiant's credentials in a particular field of medicine, *in the absence of any other showing*, are insufficient to establish the required qualifications to controvert the reasonableness and necessity of medical expenses in another field. *See Hong*, 209 S.W.3d at 804 (holding chiropractor's counteraffidavit was insufficient to controvert reasonableness and necessity of medical expenses of a physician, a radiologist, and a pharmacist because the chiropractor affiant failed to state how he was qualified to opine on those expenses); *Turner*, 50 S.W.3d at 747 (holding orthopedic surgeon's counteraffidavit was insufficient to controvert the reasonableness and necessity of medical expenses that did not involve examination or treatment by an orthopedic surgeon because the affiant failed to show how he was qualified to controvert those expenses).

In *Broders v. Heise*, we held that a physician is not automatically qualified to testify as an expert on all medical matters. 924 S.W.2d 148, 152 (Tex. 1996). But we expressly recognized that even non-doctors could provide expert testimony on a specific medical issue, provided that the offering party establishes the expert's knowledge, skill, experience, training, or education regarding the specific issue. *Id.* at 153–54. The trial court abused its discretion in concluding that Dickison's counteraffidavit fails to establish that she is qualified to testify about the reasonableness of Alaniz's medical expenses.

**B**

The trial court also found that Dickison's counteraffidavit fails to meet the statute's "reasonable notice" requirement. *See* TEX. CIV. PRAC. & REM. CODE § 18.001(f) (requiring "reasonable notice of the basis on which the party serving [the counteraffidavit] intends at trial to

10

controvert the claim reflected by the initial affidavit").[6] It gave two reasons. First, the trial court found that Dickison's counteraffidavit fails to show that she is familiar with or knowledgeable about the services and products in dispute.[7] Second, the court found the counteraffidavit conclusory insofar as it uses the median charge for a particular medical service in a specified geographical area as the litmus test for opining whether an expense is reasonable. These may be potential bases on which to challenge the admissibility and weight to be ascribed to Dickison's opinions at trial. But section 18.001 does not charge trial courts with determining the admissibility of an affiant's opinions, and a trial court's doubts about admissibility are not a proper basis for striking a section 18.001 counteraffidavit.

The inquiry the Legislature directs trial courts to make in assessing a section 18.001 counteraffidavit is whether it provides "reasonable notice of the basis on which the party serving it intends at trial to controvert the claim reflected by the initial affidavit." Section 18.001 does not define "reasonable notice," but its meaning is similar to the familiar "fair notice" requirement for pleadings under Texas Rule of Civil Procedure 47. TEX. R. CIV. P. 47(a). Under Rule 47, we have held that a pleading sufficiently provides "fair notice of the claim involved" if the opposing party can ascertain from the pleading the nature and basic issues in controversy and what testimony will be relevant. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224–25

---

[6] Section 18.001(f) also requires that the counteraffidavit "must be taken before a person authorized to administer oaths." TEX. CIV. PRAC. & REM. CODE § 18.001(f); *see also id.* § 18.001(c)(1) (imposing the same requirement for a claimant's initial affidavit). This requirement is consistent with the general definition of "affidavit" applicable to all civil statutes. TEX. GOV'T CODE § 312.011(1) (defining "affidavit" as a signed, written statement of facts sworn to before an officer authorized to administer oaths). It is undisputed that Dickison's counteraffidavit satisfies this requirement.

[7] In support of this finding, the trial court stated that Dickison "did not review the medical records underlying the charges she audited." However, Dickison states in her counteraffidavit that she reviewed the medical records for the three challenged medical providers. She also testified at the hearing that she looked at the medical records to compare what was charged by the medical provider to what was documented in the records.

11

(Tex. 2017); *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97 (Tex. 2000). This standard measures whether the pleadings or, in this case, the counteraffidavit "provided the opposing party sufficient information to enable that party to prepare a defense or a response." *Parker*, 514 S.W.3d at 225.

Dickison's counteraffidavit unquestionably satisfies the reasonable-notice requirement. The counteraffidavit itemizes each charge that is being controverted as unreasonable. And Dickison explains in detail the bases on which she and Allstate challenge the reasonableness of those charges: primarily, her comparison of the charges set forth in the initial affidavits with the median charges for those same services during the same timeframe and in the same zip code, according to the Context4Healthcare database. Indeed, Alaniz's ability to fully develop her attack on the reliability of Dickison's methodology is ample evidence that the counteraffidavit provides reasonable notice of the bases for Allstate's challenges. The trial court abused its discretion by concluding that Dickison's counteraffidavit fails to satisfy the reasonable-notice requirement of section 18.001(f).

## C

Finally, the trial court concluded that "Dickison's opinions are unreliable." Allstate argues that the trial court abused its discretion by importing a reliability requirement to the section 18.001 analysis. Alaniz counters that the opinions expressed in the counteraffidavit must meet the standard for admissibility at trial because the second sentence of section 18.001(f) requires the person making the counteraffidavit to be qualified "to testify" regarding matters contained in the initial affidavit. Alaniz contends this phrase—"to testify"—requires courts to determine admissibility under *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995). We disagree.

Nothing in the text of section 18.001(f) requires that an opinion expressed in a counteraffidavit must meet the admissibility requirements for expert testimony. Alaniz points to the phrase "to testify" in the second sentence of section 18.001(f). However, the plain text focuses not on the substance of the testimony, but only on the qualifications of the affiant. TEX. CIV. PRAC. & REM. CODE § 18.001(f). Whether a witness is qualified to provide expert testimony and whether the expert's testimony is reliable are distinct inquiries. *See, e.g.*, *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001) ("A two-part test governs whether expert testimony is admissible: (1) the expert must be qualified; and (2) the testimony must be relevant and be based on a reliable foundation.").

Alaniz also argues that if the opinions in Dickison's counteraffidavit are unreliable, then the counteraffidavit fails to give "reasonable notice" of the bases on which Allstate intends to controvert. But this argument is flawed because determining whether a counteraffidavit meets section 18.001(f)'s reasonable-notice standard does not require a court to assess reliability of the expert's opinions under Rule 702 or *Robinson*. As discussed above, a determination of whether Dickison's opinions are reliable is distinct from the question of whether the counteraffidavit provides reasonable notice to Alaniz of the bases on which Allstate intends to controvert the reasonableness of Alaniz's medical expenses. The trial court erred by importing a reliability requirement into its section 18.001 analysis.

Dickison's counteraffidavit establishes that she is qualified to controvert the reasonableness of the charges at issue, and the counteraffidavit satisfies section 18.001(f)'s reasonable-notice requirement. The trial court abused its discretion by finding otherwise and by

13

imposing an additional reliability requirement not prescribed by section 18.001 and then striking the counteraffidavit based on its failure to satisfy it.[8]

## IV

Even if the trial court's decision to strike Dickison's counteraffidavit had been correct, we would nevertheless grant mandamus relief because the trial court also abused its discretion by overcorrecting for its perceived defects. The trial court (1) prohibited Dickison from testifying at trial and, more broadly, (2) prohibited Allstate from "questioning witnesses, offering evidence, or arguing to the jury the 'reasonableness of the medical bills'" in Alaniz's initial affidavits.

As this Court explained in *Haygood v. De Escabedo*, section 18.001 is a "purely procedural" statute that is designed to "streamline proof of the reasonableness and necessity of medical expenses." 356 S.W.3d 390, 397 (Tex. 2011). In the absence of a proper controverting affidavit, section 18.001(b) merely provides that a claimant may rely on an affidavit setting forth the necessity and reasonableness of medical expenses to avoid adducing expert testimony on those issues at trial, and, if she does so, the affidavit "is sufficient evidence to support a finding of fact . . . that the amount charged was reasonable or that the service was necessary." TEX. CIV. PRAC. & REM. CODE § 18.001(b). While an uncontroverted section 18.001(b) affidavit may constitute *sufficient* evidence of reasonableness and necessity, nothing in section 18.001 even suggests an uncontroverted affidavit may be *conclusive* on reasonableness and necessity. There is no textual support for the assertion that the absence of a proper counteraffidavit constitutes a basis to constrain the defendant's ability to challenge—through evidence or argument—the claimant's assertion that her medical expenses are reasonable and necessary. The claimant's decision to file

---

[8] Our holding is limited to counteraffidavits submitted under section 18.001 for the purpose of controverting a claimant's affidavit on the reasonableness and necessity of services and their costs. We do not address the standards for testing affidavits offered for some other evidentiary purpose.

14

initial affidavits *may* relieve her of the burden to adduce expert trial testimony on reasonableness and necessity, but the opposing party's failure to serve a compliant counteraffidavit has *no* impact on its ability to challenge reasonableness or necessity at trial.

Nevertheless, several Texas courts have held that, when a counteraffidavit is struck for not complying with section 18.001(f), the party serving the counteraffidavit is precluded from presenting any other evidence at trial to oppose the reasonableness or necessity of the medical expenses in the initial affidavit. *See, e.g.*, *Ten Hagen Excavating, Inc. v. Castro-Lopez*, 503 S.W.3d 463, 494 (Tex. App.—Dallas 2016, pet. denied) (concluding the trial court properly excluded testimony controverting the plaintiff's medical expenses "in the absence of a proper counteraffidavit"); *see also In re Savoy*, 607 S.W.3d 120, 130 (Tex. App.—Austin 2020, orig. proceeding [mand. pending]) ("[I]f no counteraffidavit is filed, an opposing party may not introduce contrary evidence at trial . . . ."). This rule appears to originate from the court of appeals' opinion in *Beauchamp v. Hambrick*, 901 S.W.2d 747 (Tex. App.—Eastland 1995, no writ). In its discussion of section 18.001, the *Beauchamp* court made the following observation:

> Section 18.001 is an evidentiary statute which accomplishes three things: (1) it allows for the admissibility, by affidavit, of evidence of the reasonableness and necessity of charges which would otherwise be inadmissible hearsay; (2) it permits the use of otherwise inadmissible hearsay to support findings of fact by the trier of fact; and (3) it provides for exclusion of evidence to the contrary, upon proper objection, in the absence of a properly-filed counteraffidavit.

*Id.* at 749. The first two accomplishments of the statute as described in *Beauchamp* are consistent with the text of section 18.001: it allows claimants to introduce evidence of reasonableness and necessity through affidavits that would otherwise be hearsay, and it dictates that those affidavits are sufficient to support findings that those medical expenses were reasonable and necessary. *Id.*; TEX. CIV. PRAC. & REM. CODE § 18.001(b); *see also City of Austin v. Flink*, 454 S.W.2d 389, 390 (Tex. 1970) (recognizing that an affidavit is hearsay evidence). But the third "accomplishment"

15

described by *Beauchamp* has no basis in the statute's text. Section 18.001 nowhere provides for the exclusion of any evidence based on the absence of a proper counteraffidavit. The *Beauchamp* court provided no rationale for its expansion of the statutory text. *See Beauchamp*, 901 S.W.2d at 749.

By creating an exclusionary sanction for the failure to satisfy section 18.001(f) that finds no basis in the statutory text, *Beauchamp* and the courts following it have turned this "purely procedural" statute into a death penalty on the issue of past medical expenses. The trial court's order here did exactly that: because the court found Dickison's counteraffidavit did not comply with section 18.001(f), it precluded Dickison from testifying on the reasonableness or necessity of Alaniz's medical expenses "or for any other reason," and it prohibited Allstate from "offering evidence" of any kind regarding the reasonableness of the medical expenses addressed in Alaniz's affidavits. The trial court abused its discretion by excluding this testimony and evidence without a valid legal basis. *See In re Tex. Ass'n of Sch. Bds., Inc.*, 169 S.W.3d 653, 656 (Tex. 2005) (orig. proceeding) ("[T]rial courts have no discretion in determining the legal principles controlling their rulings or in applying the law to the facts . . . .").

In addition to preventing Allstate from introducing its own evidence to contradict the reasonableness of Alaniz's medical expenses, the trial court's order further prohibited Allstate from "questioning witnesses" or "arguing to the jury" about the reasonableness of Alaniz's claimed expenses. Just as the exclusion of evidence is not justified by a party's failure to comply with section 18.001(f), the trial court's prohibition on questioning witnesses or presenting jury argument on the topics of reasonableness and necessity of medical expenses has no legal basis. The inclusion of these prohibitions was also an abuse of the trial court's discretion. *See Tex. Ass'n of Sch. Bds.*, 169 S.W.3d at 656.

Alaniz points to section 18.001(e) to support the trial court's order. Subsection (e), which establishes the timing and procedure for serving a counteraffidavit, begins by referring to "[a] party intending to controvert a claim reflected by the [initial] affidavit." TEX. CIV. PRAC. & REM. CODE § 18.001(e). Alaniz argues that, because the trial court found Allstate failed to serve a sufficient counteraffidavit under section 18.001(f), the trial court correctly concluded that Allstate was not a "party intending to controvert" the initial affidavits, and Allstate waived its intent to controvert Alaniz's initial affidavits. We reject this reading of the statute. Section 18.001(e) identifies the party to whom its timing and procedural requirements apply: the "party intending to controvert" an initial affidavit. Nothing in the statute suggests that a party's failure to comply with section 18.001(f) demonstrates that party lacked the intent to controvert the initial affidavit. Nor is a mere failure to comply with section 18.001(f) evidence of the type of intentional conduct necessary to establish a waiver of the intent to controvert the initial affidavit. *See Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987) (defining waiver as "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right").

We conclude the trial court clearly abused its discretion, both by erroneously holding that Dickison's counteraffidavit fails to comply with the section 18.001(f) requirements and by precluding Allstate from controverting Alaniz's medical expenses through evidence or argument based on an erroneous reading of section 18.001.

**V**

We next address whether mandamus relief is warranted. Mandamus is an "extraordinary" remedy, not issued as a matter of right, but at the Court's discretion. *Prudential*, 148 S.W.3d at 138 (quoting *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding)). In deciding whether to grant mandamus relief, we look to whether an appeal is an

17

inadequate remedy. *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding). "No specific definition captures the essence of or circumscribes what comprises an 'adequate' remedy; the term is 'a proxy for the careful balance of jurisprudential considerations,' and its meaning 'depends heavily on the circumstances presented.'" *Id.* (quoting *Prudential*, 148 S.W.3d at 136–37).

Alaniz urges us to deny mandamus relief, describing the trial court's order as a "routine evidentiary ruling." But this understates the effect of the trial court's order, which (1) allows Alaniz to avoid presenting expert testimony at trial to establish evidence sufficient to support a finding of reasonableness as to her medical expenses; (2) excludes Dickison's testimony on any issue; and (3) prohibits Allstate from "offering evidence," "questioning witnesses," or "arguing to the jury" about the reasonableness of Alaniz's medical expenses. The trial court's order is far from routine.

An appeal is not an adequate remedy when "the party's ability to present a viable claim or defense at trial is vitiated or severely compromised" by the trial court's error. *Walker*, 827 S.W.2d at 843. The trial court's order not only precludes Allstate from presenting its own evidence regarding the reasonableness of Alaniz's medical expenses, but it also prohibits Allstate from challenging Alaniz's evidence through cross-examination or jury argument. The trial court's order would preclude Allstate from engaging in meaningful adversarial adjudication of Alaniz's claim for payment of medical expenses, vitiating or severely compromising Allstate's defense. Mandamus relief is therefore appropriate.

Alaniz contends that Allstate still has a viable defense because it can challenge other elements of Alaniz's claims, including liability. But the mere fact that Allstate could present different, possibly less compelling, arguments does not minimize the crippling effect the trial

court's order would have on Allstate's ability to challenge the reasonableness of Alaniz's medical expenses, a central component of her claimed damages. We conclude that an appeal provides an inadequate remedy from the trial court's order; therefore, mandamus relief is appropriate.[9]

\* \* \* \* \*

The trial court abused its discretion when it concluded that Dickison's counteraffidavit fails to comply with the requirements of section 18.001(f) of the Civil Practice and Remedies Code. The court also abused its discretion by granting relief that finds no legal basis in section 18.001 for the purported failure to comply with the statute. We conditionally grant Allstate's petition for writ of mandamus and direct the trial court to vacate its May 24, 2019 Amended Order granting Alaniz's motion to strike the counteraffidavit. We are confident the trial court will comply, and the writ will issue only if the court does not.

_____
Rebeca A. Huddle
Justice

**OPINION DELIVERED**:  May 7, 2021

---

[9] We do not hold that mandamus relief is appropriate in every case in which a trial court erroneously strikes a counteraffidavit under section 18.001. But under the particular set of facts here, and given the expansive relief granted by the trial court's order, Allstate has established its entitlement to mandamus relief in this proceeding.